**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

**Case No. 12-60892-Civ-SCOLA**

ASHLEY SEIJO,
,

    Plaintiff,

vs.

CASA SALSA, INC., CHRISTIAN
ESPINOLA and MONICA ESPINOLA,

    Defendants.

_____/

## Order Partially Granting Defendants'
## Summary-Judgment Motion

    Ashley Seijo worked as a dance instructor at Casa Salsa, Inc. from May 2009 until late March or early April 2012. Casa Salsa is a dance studio. During the time that Seijo worked there, Christian and Monica Espinola owned and ran Casa Salsa. In March 2012, Seijo asked for certain accommodations in her work because she was pregnant. She also took time off of her work as instructed by her doctor. This led to a dispute between her and Casa Salsa that culminated in Casa Salsa formally firing her in early April 2012.

    Seijo then sued Casa Salsa and the Espinolas (collectively, Defendants). She alleges that she was an employee of Casa Salsa, not an independent contractor; that Defendants violated the Fair Labor Standards Act (FLSA) by failing to pay her overtime as required by 29 U.S.C. § 207(a)(1); that Casa Salsa violated the Florida Whistleblower Act[1] by firing her because she complained that Defendants were treating her unfairly due to her pregnancy; that Casa Salsa violated the Florida Deceptive and Unfair Trade Practices Act (FDUTPA)[2] by incorrectly characterizing her as an independent contractor when she was really an employee; and that Casa Salsa violated 26 U.S.C. § 7434 by filing Form 1099's for her for tax purposes rather than W-2's.[3] Defendants move for summary

---

[1] Fla. Stat. § 448.101 et seq.
[2] Fla. Stat. § 501.201 et seq.
[3] Seijo also alleges that she is entitled to a declaratory judgment that she was improperly classified as an independent contractor when she in fact was an employee. Since Defendants do not move for summary judgment on this claim, the Court does not discuss it further.

judgment on each of these claims. For the reasons set forth below, the Court **grants in part and denies in part** Defendants' summary-judgment motion (DE 71.) Specifically, the Court grants Defendants summary judgment on Seijo's claim for unpaid overtime wages under the FLSA, but denies Casa Salsa summary judgment on Seijo's remaining claims.[4]

# Analysis

### A.   *Summary-judgment standard*

Under Rule 56 of the Federal Rules of Civil Procedure, "summary judgment is appropriate where there 'is no genuine issue as to any material fact' and the moving party is 'entitled to a judgment as a matter of law.'" *Alabama v. North Carolina*, 130 S. Ct. 2295, 2308 (2010) (quoting Fed. R. Civ. P. 56(a)). Rule 56 requires a court to enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"The moving party bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Rule 56 "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (internal quotation marks omitted). Thus, the nonmoving party "may not rest upon the mere allegations or denials of his pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (internal quotation marks omitted); *see also Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1984) ("When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.").

The Court must view the evidence in the light most favorable to the nonmoving party, and summary judgment is inappropriate where a genuine issue material fact remains. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970). "An issue of fact is 'material' if, under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. Northern Crossarm Co., Inc.*, 357 F.3d 1256, 1259-60 (11th Cir. 2004). "An issue of fact is 'genuine' if the record

---

[4] Seijo's remaining claims are asserted against only Casa Salsa.

taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Id.* at 1260. A court may not weigh conflicting evidence to resolve disputed factual issues; if a genuine dispute is found, summary judgment must be denied. *Skop v. City of Atlanta, Georgia*, 485 F.3d 1130, 1140 (11th Cir. 2007).

## B.     *FLSA claim*

Defendants argue that they are entitled to summary judgment on Seijo's FLSA claim for unpaid overtime wages because Seijo cannot establish that she is covered by the FLSA. The Court agrees.

To be protected by the FLSA's overtime-wage provision, 29 U.S.C. § 207(a)(1), employees must first show that they are covered by the FLSA. *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1298 (11th Cir. 2011). This requires satisfying the jurisdictional prerequisite of interstate commerce, which employees can do by establishing individual or enterprise coverage. *Id.* Since Seijo concedes that she cannot establish enterprise coverage (DE 101 at 5),[5] she must show individual coverage by adducing evidence that she was "(1) engaged in commerce or (2) engaged in the production of goods for commerce." *Thorne v. All Restoration Services, Inc.*, 448 F.3d 1264, 1266 (11th Cir. 2006).

Because Seijo argues only that she was engaged in commerce, the Court does not consider whether she was engaged in the production of goods for commerce. *See Martinez v. Palace*, 414 F. App'x 243, 245 n.3 (11th Cir. 2011) (declining to consider whether the employee was engaged in the production of goods for commerce because the employee did not raise that argument in the district court). An employee is "engaged in commerce" under the FLSA only if he is "directly participating in the actual movement of persons or things in interstate commerce by (i) working for an instrumentality of interstate commerce, *e.g.*, transportation or communication industry employees, or (ii) by *regularly* using the instrumentalities of interstate commerce in his work, *e.g.*, *regular and recurrent* use of interstate telephone, telegraph, mails, or travel." *Thorne*, 448 F.3d at 1266 (internal quotation marks omitted) (emphasis added).

Seijo has failed to offer evidence from which a reasonable juror could find that she is engaged in commerce through her work as a dance instructor. Casa Salsa is a dance studio, not an instrumentality of interstate commerce, a fact that Seijo does not contest. So she needs to produce evidence that she *regularly* used the instrumentalities of interstate commerce in her work. She offers the following

---

[5] For enterprise coverage, the enterprise must have an "annual gross volume of sales made or business done [that] is not less than $500,000." 29 U.S.C. § 203(s)(1)(A)(ii); *accord* 29 U.S.C. § 207(a)(1). Casa Salsa's recent tax returns show that its revenue is too small to qualify for enterprise coverage. (DE 71-5; DE 71-6; DE 71-7; DE 71-8.)

evidence: (1) she taught students from other states and countries how to dance at Casa Salsa studios; (2) she traveled to New York once a year for the National Salsa Congress as part of work; and (3) she was featured in online instructional videos posted on Casa Salsa's website that were regularly used by Casa Salsa customers who were out of state. (DE 101 at 5-7; DE 78 at 4-5.) That she taught students who were from other states or countries does not matter because she herself admits that she taught these students locally in Florida. So her contact with these students was local and did not involve the instrumentalities of interstate commerce.

The other two types of evidence both suffer from the same fundamental flaw: they do not show that she regularly used the instrumentalities of interstate commerce. For jurisdiction to exist, the "employee's interstate activity must be regular and recurrent and not simply isolated or sporadic." *Lopez v. Pereya*, 2010 WL 335638, at *5 (S.D. Fla. Jan. 29, 2010) (internal quotation marks omitted) (Cohn, j.). Traveling to New York once a year is not regular and is therefore insufficient. *See Curry v. High Springs Family Practice and Diagnosis Center, Inc.*, 2009 WL 3163221, at *3-4 (N.D. Fla. Sept. 30, 2009) (holding that a plaintiff who worked as a doctor's assistant was not engaged in commerce under the FLSA because her communication with out-of-state insurers, which occurred two or three times per week, "did not rise to the level of 'regular and recurrent' activities in interstate commerce"). Her being featured in online instructional videos is similarly insufficient. She has provided no evidence of how much time she spent participating in these videos. What evidence she has provided about her work activities suggests that she spent very little time participating in the videos: in the 11 weeks of her work schedule that she reconstructed, none of the 515 hours that she worked is listed as being spent filming online instructional videos. (DE 87-1 at 35-57.) That is significant because in determining whether individual coverage exists, what matters is not whether the employer is engaged in interstate commerce or the nature of the employer's business, but rather whether the employee is engaged in interstate commerce and the character of the employee's activities. *McLeod v. Threlkeid*, 319 U.S. 491, 497 (1943); *Curry*, 2009 WL 363221, at *2. So even if customers viewed the online videos when they were out of state, that shows only that Casa Salsa's business involved using the internet to offer dance lessons to customers. That does not show that Seijo regularly and recurrently spent her working time participating in online videos by being filmed for them. The working time Seijo spent on these videos is the amount of time she spent being filmed for the videos. When a customer views a video showing her dancing, she is not working while that video plays, nor was there any evidence presented that she got any portion of the revenue generated by the online videos. Casa Salsa was generating revenue through the online videos by selling memberships which allowed members to view them, but that relates to Casa

Salsa's business, not how Seijo spent her working time. In determining individual coverage, what matters is how she spent her working time and the character of her work. *McLeod v. Threlkeid*, 319 U.S. 491, 497 (1943); *Curry*, 2009 WL 363221, at *2. And because the argument she advances requires her to show that she was engaged in interstate commerce in order to establish the Court's jurisdiction, she bears the burden to prove that jurisdiction exists. *Curry*, 2009 WL 3163221, at *2. By failing to adduce any evidence indicating how much time she spent being filmed for videos, she has failed to carry that burden just like the plaintiff did in *Dent*. *See Dent*, 606 F. Supp. 2d at 1361. Dent "failed to show that she regularly and recurrently engaged in interstate commerce" because her affidavit—which recited "that her job duties *included* contacting out of state insurance companies"—did not state "how much of her time was spent conducting these activities." *Id.* So too here.

The conclusion that Seijo did not show that she regularly and recurrently engaged in interstate commerce follows even more strongly than in *Dent*. Not only is there no evidence of how much time she spent filming online videos, but the undisputed evidence shows that she spent the vast majority of her work time teaching dance to students in Florida and performing activities related to that teaching, such as training, developing choreography, planning classes, and rehearsing. No reasonable factfinder could conclude from the evidence that she offers that she was engaged in commerce under the FLSA. The Court therefore **grants** Defendants summary judgment on this claim.

### C. *Florida Whistleblower Act claim*

Casa Salsa argues that it is entitled to summary judgment on Seijo's claim under the Florida Whistleblower Act, Fla. Stat. § 448.101 et seq. The Court disagrees.

Among other things, the Florida Whistleblower Act makes it unlawful for an employer to discharge, suspend, or take any other adverse employment action against an employee because the employee has "[o]bjected to, or refused to participate in, any activity, policy, or practice of the employer which is in violation of a law, rule, or regulation." Fla. Stat. § 448.102(3); *see* Fla. Stat. § 448.101(5). The Whistleblower Act defines an *employer* as a private person or entity "that employs 10 or more persons." *Id.* § 448.101(3). The law or regulation that Seijo asserts she objected to Defendants violating is the Broward County Human Rights Act (BCHRA). That Act makes it unlawful for an employer to, among other things, "discharge, or to otherwise discriminate against an individual, with respect to compensation or the terms, conditions, or privileges of employment, because of a discriminatory classification." BCHRA § 16½-33(a). An *employer* in turn is a person or entity that employs five or more employees for each working day in 20 or more calendar weeks in the current or preceding year. *Id.* § 16½-

3(x), (oo).  A *discriminatory classification* "means a classification on the basis of . . . pregnancy." *Id.* § 16½-3(p).

Seijo has presented evidence from which a reasonable factfinder could conclude that Casa Salsa fired her because she complained that Defendants were treating her unfairly due to her pregnancy.  (For purposes of summary judgment, Defendants concede that Seijo "engaged in protected activity within the meaning of the Florida Whistleblower Act." (DE 90 at 2.))  After Casa Salsa informed her in early March 2012 that she needed to attend weekly outings despite being pregnant, Seijo asked that she not be required to go to an outing when the establishment allows smoking or when she had worked and attended school that same day.  (DE 87-1 at 72.)  She provided a doctor's note explaining that because she was pregnant, she should rest for 8-10 hours per day and should avoid establishments that allowed smoking.  (*Id.* at 74-75.)  On March 16, 2012, she advised that she was taking four days off to recuperate as directed by her doctor. (*Id.* at 77.)  Shortly thereafter, she was removed from the schedule, locked out of the Mind and Body System,[6] and told she could not work until she met with the Espinolas regarding her condition.  (*Id.* at 79-82; DE 78 at 8.)  Significantly, Seijo was not refusing to meet with the Espinolas, but the parties were having difficulty scheduling a mutually agreeable meeting.  (DE 87-1 at 79-82; DE 78 at 7-8.) Seijo then retained an attorney and filed a charge of pregnancy discrimination with the Equal Employment Opportunity Commission on March 23, 2012.  (DE 87-1 at 83-85.)  In his first letter to the Espinolas on March 23, Seijo's attorney reiterated his client's willingness to meet and asked them to call him to schedule a meeting time.  (*Id.* at 83; DE 78 at 8.)  Defendants retained an attorney and fired Seijo on April 9, 2012.  (DE 87-1 at 86.)  Even if the evidence were not viewed in Seijo's favor as it must be when considering Defendants' summary-judgment motion, a reasonable factfinder could conclude on this evidence that Casa Salsa discharged Seijo for her objecting to the way Defendants treated her because she was pregnant.

Casa Salsa's arguments to the contrary are unavailing.  It contends that the Florida Whistleblower Act does not apply to it because it did not employ 10 or more people during the relevant time period.  For support, it cites to quarterly tax filings showing that it had fewer than 10 employees.  (De 71-17; DE 71-18.)  But Seijo avers that Casa Salsa incorrectly classified many employees as independent contractors to avoid paying taxes.  (DE 78 at 1, 3-4.)  And she points to decisions from the Florida Department of Economic Opportunity and the Florida

---

[6] This system is used by Casa Salsa to record teacher schedules, client information, teacher calendars, and payroll.

Department of Revenue[7] that support this position: these opinions—which analyzed the status of only the Espinolas and the dance instructors—hold that all the dance instructors and the Espinolas are employees of Casa Salsa. (DE 87-1 at 87-98.) Seijo identifies 13 and 12 people listed in two work emails from around the time she was fired and avers that based on what she has learned about the differences between employees and independent contractors, all of these people were employees of Casa Salsa. (DE 78 at 3-4, 32-34.) Whether Casa Salsa employed more than 10 people so as to be an *employer* covered by the Florida Whistleblower Act is therefore a disputed material fact.

Casa Salsa's remaining argument—that Defendants have articulated a legitimate, nondiscriminatory reason why they fired Seijo, and that she cannot show that this reason is a pretext—is also unpersuasive. This argument is made entirely in a three-sentence footnote. (DE 71 at 12 n. 4.) Its hastily sketched nature is not its only flaw. Defendants argue that they fired Seijo because she refused to meet with them and she refused to return to work. But the emails between first Seijo and Casa Salsa, and then later Seijo's attorney and Casa Salsa show that she was willing to meet. A reasonable factfinder could conclude that Defendants fired her not because the meeting did not happen, but rather because Seijo objected to how Defendants unfairly treated her.

Seijo's claim that Casa Salsa violated the Florida Whistleblower Act by terminating her stands. The Court therefore **denies** Casa Salsa's request for summary judgment on this claim.

### D.     *Florida Deceptive and Unfair Trade Practices Act (FDUTPA) claim*

Defendants contend that Casa Salsa is entitled to summary judgment on Seijo's FDUTPA claim. Seijo argues that Casa Salsa violated FDUTPA by improperly characterizing her as an independent contractor so that it could avoid paying payroll taxes and avoid paying into the unemployment-compensation fund on behalf of mischaracterized employees such as Seijo. Casa Salsa argues that the statute requires a misrepresentation to consumers and is thus inapplicable because Seijo was not a consumer. This argument is unpersuasive.

FDUTPA prohibits a very broad range of activities. FDUTPA makes it unlawful to engage in "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204. Courts have regarded this prohibition as "extremely broad" when deciding whether a defendant's activities fall within it.

---

[7] In June 2012, the Florida Department of Revenue determined that dance instructors are employees of Casa Salsa retroactive to May 1, 2009. (DE 87-1 at 94.) The Department also determined that the Espinolas are employees for tax purposes. (*Id.*)

*Furmanite America, Inc. v. T.D. Williamson, Inc.*, 506 F. Supp. 2d 1134, 1147 n. 11 (M.D. Fla. 2007) (internal quotation marks omitted). Moreover, § 501.211(2) "provides that any person who has suffered a loss as a result of such practices may commence a private action for actual damages and possibly attorneys' fees and court costs. . . . A practice is unfair under FDUTPA if it offends established public policy, is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *Id.* at 1145. And because § 501.201(2) was amended in 2001 to replace the word *consumer* with the word *person*, the legislature made clear that a person could sue under § 501.211(2) even though the unlawful practices did not involve a consumer transaction. *Id.* at 1145-47.

Seijo has produced evidence from which a rational factfinder could conclude that Casa Salsa ran afoul of FDUTPA. FDUTPA covers conduct that "offends established public policy," and there is certainly an established public policy that employers should correctly characterize their employees as employees instead of independent contractors and pay the proper taxes for those employees. (*See* DE 87-1 at 91-98 (discussing a variety of Florida statutes and case law relating to how to determine whether individuals are employees or independent contractors and making plain that the law requires this determination to be made accurately).) Moreover, a rational factfinder could conclude that if a business fails to pay proper payroll taxes, that constitutes an unfair method of competition because the business would be paying less taxes than a competing business that follows the tax laws and therefore would have more money to use to best those competing businesses. That no consumer transaction was involved in Casa Salsa's failure to accurately characterize Seijo as an employee is immaterial because Seijo can sue Casa Salsa under § 501.211(2) even though no consumer transaction is involved.

Similarly unpersuasive is Casa Salsa's argument that there was no misrepresentation in its conduct. Nothing in the statute requires a misrepresentation: it prohibits (a) unfair methods of competition and (b) unfair or unconscionable acts of practices. Fla. Stat. §§ 501.203(3), 501.204(1), 501.211(2). And even if a misrepresentation were required (it isn't), Seijo avers that when she began working for Casa Salsa, she was required to sign an agreement stating that she was an independent contractor even though she did not know what that was. (DE 78 at 1.) It was not until later that she learned that she should have been characterized as an employee.[8] (*Id.* at 4.) So Casa Salsa's characterizing her as an independent contractor did mislead Seijo.

---

[8] Presumably Seijo learned this around the time she hired an attorney and began contesting her independent contractor designation so that she could receive unemployment compensation. That's because there is no evidence that Seijo contested her independent-contractor designation before then and because she

And there is evidence that Casa Salsa knew that it had incorrectly categorized workers as independent contractors rather than employees. Olivia Gonzalez avers that she worked for Casa Salsa from August 2009 until August 2011. (DE 77 at 1.) When she started working there she—like Seijo—signed an independent-contractor agreement because she was not aware of the differences between being an independent contractor and an employee. (*Id.*) When she filed her taxes for tax year 2009, she incurred more taxes as a result of being incorrectly categorized as an independent contractor. (*Id.*) Her tax advisor told her this was because she was not actually an independent contractor under IRS guidelines. (*Id.*) So she complained to Casa Salsa and the Espinolas in 2009 about being wrongfully characterized as an independent contractor. (*Id.* at 2.) In July 2011, she was offered a promotion, but Monica Espinola informed her that it would be an independent-contractor position. (*Id.*) After doing basic research on the IRS website and Google, she found information showing that the position should actually be categorized as an employee position rather than an independent contractor. (*Id.*) Then, she provided Monica with this information at a meeting where she explained that she would not take the position if it was an independent-contractor position because it did not qualify as one under the law. (*Id.*) Monica commented on how prepared Olivia was and asked to keep Olivia's packet of information and notes on the subject. (*Id.* at 3.) Olivia gave them to her. (*Id.*) Even though Monica had originally told Olivia that the position was an independent-contractor position, once Monica witnessed Olivia document why the position should be an employee position, Monica "conveniently" told Olivia that Monica had actually been told by her accountant that the position could be an employee position. (*Id.*) Based on this backtracking by Monica, a reasonable person could infer that Monica knew the position should actually have been categorized as an employee position, but that Monica was attempting to mislead Olivia to accept the position as an independent contractor so that Defendants would not have to pay all the taxes required by law. In other words, a reasonable person could infer that Monica was intentionally trying to deceive Olivia to circumvent tax law and that Casa Salsa characterized some of its employees as independent contractors in bad faith. At the very least, Casa Salsa had been informed as early as 2009 that it was incorrectly categorizing workers as independent contractors rather than employees. And yet Casa Salsa continued to incorrectly characterize Seijo and other dance instructors as independent

---

signed amended independent-contractor agreements without protest in December 2010 and June 2011. (DE 78 at 2-3.) But the precise moment she learned this is irrelevant. What matters is that she did not know this when she began working for Casa Salsa and signed their independent-contractor agreement.

contractors until June 2012 when the Florida Department of Revenue found that the instructors were employees under Florida law. (DE 87-1 at 94.)

Casa Salsa's final argument is that Seijo failed to establish any damages resulting from its alleged violation of FDUTPA. (DE 90 at 8-9.) Because this argument is raised for the first time in Defendants' reply brief, Defendants have forfeited it. *F.T.C. v. IAB Marketing Associates, LP*, —F. Supp. 2d—, 2013 WL 5268216, at *3 (S.D. Fla. Sept. 18, 2013) (Scola, J.); s*ee United States v. Lopez*, 649 F.3d 1222, 1246 (declining to consider an argument raised for the first time in a reply brief because "that is too late" (internal quotation marks omitted)).

The Court therefore **denies** Casa Salsa summary judgment on this claim.

### E.    26 U.S.C. § 7434 claim

Defendants contend that they are entitled to summary judgment on Seijo's clam that Casa Salsa violated 26 U.S.C. § 7434 by filing Form 1099's for her for tax purposes rather than W-2's. For the reasons set forth below, the Court **denies** Casa Salsa summary judgment on this claim.

Section § 7434 provides that "[i]f any person willfully files a fraudulent information return with respect to payments purported to be made to any other person, such other person may bring a civil action for damages against the person so filing such return." "To establish a claim of tax fraud under 26 U.S.C. § 7434," Seijo must prove (1) that Casa Salsa issued an information return; (2) that the information return was fraudulent; and (3) that Casa Salsa willfully issued a fraudulent information return. *Pitcher v. Waldman*, 2012 WL 5269060, at * 4 (S.D. Ohio Oct. 23, 2012) (Bowman, Mag. J.). Seijo has produced evidence from which a reasonable factfinder could conclude that Casa Salsa violated § 7434 by filing Form 1099-MISC's for the payments it made to her because that form is used to record payments made to independent contractors and Seijo was not an independent contractor. In *Pitcher*, the magistrate judge recommended that a similar claim under § 7434 survive summary judgment: the plaintiffs in that case argued that Defendants had violated § 7434 when they issued them 1099-MISC's because the income due to them should not have been reported on that form. The amount of the payment was not in dispute; rather, it was the form used to report that payment and the tax implications that went along with that form.

Seijo satisfies the first element because a 1099-MISC is considered an information return. *Vandenheede v. Vecchio*, 2013 WL 692876, at *2 (E.D. Mich. 2013). The second element requires proof that the return was fraudulent, which means that it was not an error, but rather an "intentional wrongdoing." *Pitcher*, 2012 WL 5269060, at *5 (internal quotation marks omitted). Here the affidavit of Olivia discussed above provides evidence that Casa Salsa knew that it was incorrectly classifying workers as independent contractors rather than employees

and knowingly issuing these workers 1099-MISC's incorrectly. A factfinder could conclude based on this evidence that the 1099-MISC's issued by Casa Salsa to Seijo were fraudulent. For similar reasons, that same affidavit of Olivia also provides evidence from which a reasonable factfinder could conclude that Casa Salsa "willfully" issued fraudulent returns to Seijo. "The issue of willfulness, like proof of a 'fraudulent' error, is closely tied to proof of [Casa Salsa's] intent. Courts have interpreted the term 'willfully' as requiring 'proof of deceitfulness or bad faith in connection with filing an information return.'" *Id.* at * 9 (quoting *Cavoto v. Hayes*, 2010 WL 2679973, at *4 (N.D. Ill. July 1, 2010)). Because a reasonable factfinder could conclude that all three elements of § 7434 are met, the Court **denies** Casa Salsa summary judgment on this claim.

## Conclusion

For the reasons set forth above, the Court **grants in part and denies in part** Defendants' summary-judgment motion (DE 71.) Specifically, the Court grants Defendants summary judgment on Seijo's claim for unpaid overtime wages under the FLSA, but denies Casa Salsa summary judgment on Seijo's remaining claims.

**Done and ordered** in chambers, at Miami, Florida, on November 25 2013.

_____
**Robert N. Scola, Jr.**
**United States District Judge**